Good morning everyone, welcome. Our first case this morning is John Doe v. Purdue University. Mr. Beiler. Good morning, Your Honors. May it please the Court, my name is Phil Beiler, and I represent the plaintiff's appellant, John Doe, a student who is a suspended student from Purdue as a result of a sexual misconduct tribunal finding. He is subject to readmission requirements and he's lost his Navy ROTC scholarship. We seek the reversal of the opinion and order of the matricate judge who had exercise jurisdiction under 28 U.S.C. 636C and the associated judgment. Granting Purdue's motion to dismiss John's 68-page complaint for failure to state a claim. Now just by way of short background, John brought this case because his dream has been to serve his country as a Navy officer, and that's been destroyed by this disciplinary case. Based on false accusations of sexual misconduct made five months after the supposed occurrences with no contemporary historic men supporting them and contrary to the text messages between John and Jane Doe. This is not a was there a consent, this is a it didn't happen case. Mr. Beiler, the district court dismissed some of your claims without prejudice. Did you have an opportunity to seek to amend or did you try to do so? No, what we did when we filed our jurisdictional statement is that when you read through the complaint, although the lower court said without prejudice, when you read the findings of the court with respect to property interest, with respect to no gender motive, I mean motivation factor, with respect to no ongoing harm, it was all with prejudice. It was self-contradictory. And so we filed a statement pursuant to the docketing statement of this court, and I don't think there's been any dispute that we're effectively dealing with a final judgment. My point was a little bit different. Did you try to amend before the district court? No, because it would have been futile given the rulings of the court. Sometimes you should have an amendment where you can rectify something that the lower court has said, oh, you need to plead some more here. Now, I would have pleaded more if you said, hey, you need to plead a little more on some subject. That's not what the district court or what the magistrate judge did here. And that's why. And it's unfortunate, because I think as a matter of law, the magistrate judges are just dead wrong. Now, first of all, as I did in Dovey, Columbia, because I was the winning appellate lawyer in that case, I asked the court to read the complaint. And Judge LaValle, in the oral argument, had it open in front of him as he was asking questions. I do so because I think the magistrate judge has badly mistreated this complaint. We do have grounds for prospective injunctive relief. What we seek is the standards. The first thing we seek in these cases, elimination of disciplinary marks from the record, taking care of suspension or readmission. We'd be seeking to strike that here. And what we seek here is reinstatement of the ROTC scholarship. That's ongoing harm to him, real harm, immediate harm. And it's bad. Who has the authority to reinstate? Which of the defendants has the authority to reinstate the Navy ROTC scholarship? I'm sorry, I didn't catch that. Which of the defendants has the authority to restate the ROTC scholarship? The way it would work is that if you eliminate the disciplinary record, the readmission to ROTC, I'm not sure which specific officer would follow because he no longer has the disciplinary mark. He's disqualified now. You take away the disqualification and you have the ability to get back in ROTC. Okay, so that means, though, that readmission to ROTC is not one of the things you're seeking injunctive relief for. You're seeking injunctive relief because you want the disciplinary mark expunged. You want him readmitted to Purdue. And then the reinstatement of the scholarship flows from that. Should flow, yes, but we want to make it express, obviously. Anyway, we also allege grounds for constitutional due process violation. And given what Sixth Circuit did 11 days ago in Doby Blum, it's a hot issue. Counsel, I want to ask you a question about that. You repeatedly say that the proceeding in front of the disciplinary board was not a hearing. There was no disciplinary board. Well, when he had the meeting with the three panelists, you say, I mean, he was heard, right? No, no, no. So I'm just wondering why it's not a hearing. I'm sorry, I don't mean to interrupt. What happens here, this is an investigative model. The dean, and the dean alone makes the decision. There are members of the committee on equity, I think they call it, who sit in any meeting. It's not a hearing. There's no sworn testimony. And in this instance, John Doe appeared for a half hour to respond to questions. He's informed beforehand, we're not going to need evidence. We're just going to ask questions. There is no vote by those committee members. The dean and dean alone makes the decision. And in this case, Jane Doe didn't appear in front of that committee, ever. Did John Doe make a statement to the committee in addition to answering questions? Yeah, John Doe responded in writing to, and this is all laid out in the complaint, that's why I asked you to read it, to the original notice. And it was a lengthy statement denying everything and adding additional information, including that this didn't happen. And also, Jane Doe tried to commit suicide, he reported to the university, and all this happened after five months. And she brought the complaint during what Purdue's CARE calls the sexual assault. But during the proceeding before the three individuals, including the dean, did John Doe make an oral statement in addition to answering questions? Yes. Well, no, he doesn't make an oral statement. He responds orally to what questions, and according to the account he gave, which was reflected in the complaint, he was asked questions by one member. And the other two members basically said, we haven't read it, we were unprepared. The dean sits back. John Doe responded to the questions. That's all he can do because that's all he's supposed to do. So he doesn't get to make a statement at the end, summarizing his? No. The statement of what he received when he received notice about a week before this hearing, not hearing, it was a meeting, June 6th, is this is not to take evidence, not to take evidence, just to respond to questions. We have a predicate question on the due process claim about whether there's a protected property or not. Yes, I've been responding to questions, and that's why. But I want to be clear that the dean alone made the decision, and without ever seeing Jane Doe, she made a credibility determination. Right. That much is clear from the complaint. But we do have this legal question, and the case law in this circuit is different from the sixth and the second. Well, yes. I mean, anywhere else in the country this wouldn't even be argued, I think. But it is here because of some of the precedents. What I laid out in the brief is as follows. First of all, to remind you what the spring court law is, and we're all bound by the spring court in terms of the definition of property in Board of Regents v. Roth. The cases relied on by the magistrate judge were not cases involving sexual misconduct tribunals. They were involving academic failure. Charleston, which is the lead case, I think, was a case where there was a plethora of academic failures, written errors in the written work, late quizzes, failure to get signatures on case logs, self-failing performance as a medical student. Counsel, can you point? I mean, I understand the facts of Charleston, but could you point to some provision on this property interest point, some aspect of an implied contract between the state of Indiana and John Doe that was violated, like a good cause before dismissal guarantee or something like that? What I do in the brief and what I intended to do here is to say, look, your cases where it restricts the property are not cases involving sexual misconduct tribunals. Sixth Circuit has been very clear in recent decisions that these are different interests. The master judge totally missed this. But you either have a property interest in your education or you don't. It doesn't matter. Yes, and what I say is, given the Supreme Court law on Board of Regency Roth, let's look first at Indiana law, which in the Amaya case and Neal case and the grand Purdue cases all recognize an implied contractual relationship between the student and the university. And further, Indiana law and Riley and Gagnon cases recognize it is protected by the 14th Amendment. And so I have a section of the brief called Per the Seventh Circuit Case Law because Charleston goes on to say that this is not to say that you don't have a property interest. You need a legally protected entitlement. And that's what I say exists because and is pled in the complaint. And I give the paragraph numbers 81 through 85, 137, 142, actually 81 through 90. In terms of there is a legally protected entitlement, is an implied contract that is secured by property, by protections of the 14th Amendment with admission being granted and with tuition being paid, you are entitled to that. And what the complaint pleads is you can't have it taken away without a 14th Amendment hearing concerning whatever it is. And is your only way around Charleston then based upon the subject matter of Charleston, that it involved academic dishonesty? I think in discussions in this area with people, that was the first area. I think Charleston goes too far in my own view, but I don't have to argue that it should be put back. Charleston is the Seventh Circuit. Are you asking us to overrule Charleston? No, I'm asking you to take the point in Charleston that recognizes that you can have a legally protected entitlement and realize, as the Sixth Circuit has done in three of their decisions, Dovey-Miami, Dovey-University of Cincinnati, and 11 days ago, Dovey-Baum, the interest involved in the sexual misconduct tribunals, recognizing that a disciplined male student with this kind of finding against them has a severe harm. But that goes to liberty, right? And as a result, the best way to do it, because would I have written Charleston differently? Yes. But the best way I think can be done is to take what is in Charleston about, a legally protected entitlement, and to conjoin that with what the Sixth Circuit has rightly recognized, these are different interests. And the more prominent part of the matter, in Judge's opinion, he's treating these cases on academic failure as if it's the same thing. No, no, no, no. Counsel, but the interest analysis goes to the question about what degree of process is due, assuming a protected property or liberty interest. It doesn't go to the question about whether there's a protected interest. The protected interest has to arise under state law and has to have some terms that give it some shape and form. And you haven't alleged that here. You've just alleged in a conclusory way that there's an implied contract. What are the terms of that contract or the promises, and what is the source of those promises? Well, I turn to what the complaint was drafted on was really the background of the Indiana state law recognizing an implied contractual relationship. Right, but even the Indiana cases that you cite for that proposition say that there must be terms that arise from student handbooks, student manuals, some kind of concrete source of a promise on the part of the university to the students before discipline is imposed. Well, we do plead in the complaint that it references the handbooks and the codes and so on. But Charleston said that the procedures, you alleged the procedures from the handbook, and Charleston said that the procedures can't form the basis of a due process property right. Well, what is also in the code is that you basically, assuming that you're not failing your courses and you're not violating the disciplinary rules, you are entitled to continue as a student. Where does it say that? In what document that the university gives either electronically or in hard copy to the student? That's in the admission materials that the student receives. Is that pleaded? Well, since when do you get thrown out of college when you have, let's say, an A average and you're not violating disciplinary rules? This is what is recognized throughout the country, really. Did you plead that? It says in New York in implied contract. Did you plead that? Did you plead those facts, as Judge Sykes asked? Did you plead those facts? I plead the general facts, you know, and I wasn't told, well, plead some more facts here. You know, you're in the right area. They said no property interest, and that's not right. Counsel, why don't you talk about stigma plus? Do you think, was there a legal alteration in his status? Do you think that's a more promising avenue for you here, given the law in the circuit on the property interest? Well, stigma plus is the liberty interest. The stigma comes from the sexual misconduct finding. Excuse me, I mean... What's the plus factor? Yes, well, the plus factor is the infliction of harm from the... What changed in legal relation? Hmm? What changed in legal relation? His relationship with the... He is a suspended student, and he's subject to readmission requirements, and also the plus is he's lost his ROTC scholarship. He's at Purdue as a scholarship student. And his job offer from the Navy for a commission into the Navy as a lieutenant. Yes, yes, and that's plus. That is plus. You know, there's a stigma. What about the disciplinary aspect that's on his record going forward? Well, it's there unless we prevail in this case. Could that be a change in legal status? Could that be a change in legal status? Yes, yes, at least I assume that's what I just said. No, that is a change in his legal status, that he has this disciplinary mark, which has consequences. And it's real frustrating in this area. Maybe they're starting to be recognized, but disciplined males, falsely accused, as this one is, suffer severe consequences in their lives. They can't get necessarily into law school. They can't necessarily get... Well, they don't. They don't get in medical school. That V, big V, is on their chest, and they can't necessarily transfer to another school. This has severe harm, and so, yes, it changes the legal status. Counsel, let me shift you to Title IX for a minute. The Second Circuit has said that the McDonnell-Douglas pleading framework should apply in Title IX cases as it does in Title VII. Is that your position in evaluating what you say to decline? I take that position with a plus. The Second Circuit said we don't need that in Miami in order to uphold the complaint, and I think we have more facts than the one in Doby, Miami. Yes, I think the Second Circuit approach, articulated by Judge LaValle, is the right approach, but you don't need it in order to uphold the complaint here in terms of the pleading of gender bias. McDonnell-Douglas is not a pleading standard. It's a proof standard. So the Second Circuit was wrong about that. To oppose it as a pleading standard, if that's what that case stands for. I'm not sure that that's what that case stands for, but if it is, that's an error. Look, I think Judge LaValle articulated it correctly. However, that's why I said... I'm helping you, Counselor. What I'm saying is the Sixth Circuit didn't use that, and what I'm saying is you don't need to use that to uphold the complaint here. Okay, there you go. So we don't need to plead to McDonnell-Douglas, but you do need to plead some facts that suggest gender-based bias. I think there is a plethora here. Okay? I mean... What are your best allegations for that? We've got limited time left. And distinguish... When you answer that, please, since you have limited time, distinguish gender bias versus victim bias, which is what the magistrate judge... Well, I want to exactly talk about that, quite frankly. Thank you. Thank you. Because you can't talk about them being different here. You just can't. Nearly all the respondents... We do a lot of these cases, and nearly all respondents are male. Nearly all complainants are female. So when you talk about victim-oriented process, first of all, you're not talking about a neutral process. You're talking about a tilted-scale process. And secondly, what set that up was the Dear Colleague Letter 2011, which is now revoked, which said this is to protect women. I mean, if you read the Dear Colleague Letter, after prefrontally quoting the statute, it jumps to saying, well, we have a crisis on college campuses. One in five college women are being assaulted, which is a false statistic. And then they lay out procedures that they want to be followed and which they enforce effectively because they would threaten withdrawal of federal funding. What has happened is that you have these victim-oriented processes which were done to protect women. In all of the other cases that have permitted these claims to go forward under Title IX, there was some university-specific external pressure based on the Dear Colleague Letter or some other investigation by the Department of Education. We don't have those allegations here. No, no, that's not true. WMIA, by the way, does allow just solely on the federal pressure. And what I'd say more is, this case started with the sexual assault awareness month. And that's when a report was made by Jane Doe the care, by the way, in the month, the agency within Purdue that set it up was distributing a Washington Post article that said, assault is not the problem, men are. Now, what I have to say is, you have a situation in which you do have a victim and gender-biased process. And you see that by seeing how it functions in terms of the investigation. John Doe doesn't get the investigation report. And it falsely says he confessed. He didn't. Dean Sherman is making a credibility judgment having not even seen Jane Doe. Counsel, you're going to have to wrap up well into your rebuttal time. I've been trying to respond to questions. But, you know, I honestly was hoping you'd ask about that. Because you can't distinguish between the two. Sometimes you see in some of these district court opinions get reversed. By the way, one of the district courts that got reversed, the lower court relied on was Doe v. Baum. What you have is attitude is, well, gee, you know, okay. Females are making complaints. Male are the respondents. We have in Title IX, and I quote Scalia on that in his book, about look at text. It's a nondiscrimination statute. It does not justify what was set up with these tribunals being tilted heavily towards finding males guilty. That's what happened here. I think we have your argument. I can go longer if you want. You're well into your rebuttal time. I intended to reserve a little bit of time rebuttal. We'll see how much you have left, Mr. Keeley. It's your turn. Good morning. May it please the Court, William Keeley for the affidavits. The complaint fails to state a Title IX private right of action for intentional gender discrimination. I wish to talk about that first. The erroneous outcome theory of relief is frankly misnamed. An error is a mistake. Title IX is not about mistakes. Title IX is about intentional gender discrimination. The Title IX private right of action is limited to intentional gender discrimination. We know that from Alexander. An investigation is not an act of intentional gender discrimination. Title IX required the investigation of Jane Doe's allegation. We know that from Davis versus Monroe County. We know that from Doe versus Goldster, many other cases. The complaint alleges a stark choice. In this case, someone was lying, Jane Doe or Don Doe. This is not a case about alcohol. It's not a case about ambiguous consent. Counsel, so it was a case about who was lying. Jane Doe, am I correct, did not submit her own statement, much less a sworn statement. She did submit her own statement. She submitted a statement that the rape counselor at CARE wrote up on her behalf, correct? Wrote up from her interview with her. Correct, but she did not hear from Jane directly, even in writing. Is that correct? The statement was submitted by the- By someone else who wrote it. That's correct. She did not write it herself. That's correct. So it was a credibility contest in which you not only did not hear directly from her, you didn't even read words that she had written. That is correct. But the complaint insists that the key credibility determination was the credibility of John Doe. He hung his hat on his credibility. And in this case- No, doesn't the complaint- No, go ahead. Doesn't the complaint allege that the dean made a credibility determination that Jane Doe was more credible than John Doe without having assessed her? Without having assessed all the evidence that was made available. Without having assessed all of the evidence and without having seen Jane Doe speak to make an assessment of her credibility. She did speak through texts, which are alleged in the complaint. But the complaint alleges she didn't have the opportunity to personally observe her and make a credibility determination that way, in addition to no cross-examination and other factors. That is an allegation of the complaint, but I would submit it doesn't cut, in fact, in John Doe's favor. If Jane Doe did not speak directly, did not speak live, and nonetheless John Doe was not able to convincingly explain his text messages, we have to remember the context of the allegation. The allegation was that this was digital penetration while sleeping. Jane Doe was not an eyewitness to her own violation. She learned of the violation because John Doe told her that he did it. Now, he disputes that he told her. He had an opportunity to explain how and why it was that she would come. So he had to rebut the allegations. So the burden was on him to show that he didn't do it and was credible. Actually, what he had to rebut were his own text messages, Your Honor. So he was debating against his own contemporaneous statements in text messages, and that's alleged in the complaint. Yeah, I understand there was that evidence, but still, as a matter of credibility, you're saying her credibility was assumed. No. I don't think that would be the case. The obligation that Purdue had was to investigate. Purdue has no reason to do anything except look at the evidence that the accused said was inculpating of John Doe. Excuse me, that the accuser said was inculpating of John Doe. If she had shallow evidence, if she wasn't going to testify live, then that certainly is something that can be considered in weighing the evidence. But John Doe's contentions, alleged frankly in the complaint, are not about her failure to testify. His allegations are that she waited, that there was sexual assault awareness month, that there was circumstantial evidence that suggested that this was an artifact of something other than this happening. And he hung his hat on his own rhetorical question quoted in the complaint. Why would I not only admit to something that didn't happen, but also knowingly admit to something that would jeopardize my ROTC scholarship and future serving my country? That's the defense ground he stood on. So he asked that the decision be made on the basis of his credibility. Well, he wasn't given an opportunity to contest hers because she didn't appear live at the hearing, if it can be called that. It wasn't really a hearing. It was a meeting before this three-person panel. And so he wasn't given an opportunity, the normal opportunity, when there's a credibility judgment to be made, to cross-examine and expose the weaknesses in the accuser's story. Well, in Title IX it's not. He had no choice but to just put in his own statement, and it wasn't even in the usual adversarial context either. It was just a response to, according to the complaint, which we have to credit at this point, a response to hostile questions from one member of the three-person panel, and two members hadn't read the investigator's report. And he didn't have access to that report, so he didn't know what was coming at him. So let's take those in order. The report is an analysis. The report is not evidence. So there can be lots of analyses. There's an allegation that the report falsified a confession. The investigators state in the report their opinion of the credibility of a witness. That's an opinion. We have to accept the allegations in the complaint. Evidently you know something more about what's in the report than we do. It's not in the complaint. We're given allegations about a false confession and allegations that he wasn't permitted a copy of the report. And that the inference can certainly be drawn that the report was evidence that was considered. The report was an analysis, but I won't quarrel with you. We have to go on what's alleged in the complaint. And certainly there are enough allegations in there, drawing all reasonable inferences, that that report was relied on in making the final determination. It was an investigation. That's what Title IX called for. It was a report of the investigation. That was relied on in making a final determination against John Doe. Certainly. But the evidence is the underlying contemporaneous text messages, the recollections of the only witnesses, the two participants in the event. So the report is not evidence. The Title IX investigation has not, under applicable law, been a trial. It's an investigation. No case has called under Title IX. No case has found under Title IX an entitlement to a trial, to an adversarial process. It's a school discipline procedure. Fundamentally it grows out of a long history of cases. Well, the Sixth Circuit has certainly found there's an entitlement to an adversarial process, including cross-examination. You said no case has found that. The Sixth Circuit has. Very recently. And they have done so against, to my reading of that opinion, respectfully, a blank slate. There is not a grounding for that conclusion in the Title IX private right of action case law. Title IX is fundamentally not a due process statute. It's an anti-bias statute. So the criterion for the Title IX private right of action is whether there is bias, not whether there is insufficient process. So you're not defending this process as a matter of due process law? I'm defending this process as completely compliant with a long history of school due process cases that say that school due process requires notice and an opportunity to be heard. To be heard, not to examine, to be heard. Counsel, is this the same process that you apply in other disciplinary contexts, or do you apply a different process in sexual assault hearings? This is fundamentally the same process, yes. So to pursue that observation, the suggestion that these cases are fundamentally different, that they're in a category by themselves, is an erroneous premise. So schools like Purdue regulate drug possession. They regulate weapon possession. They regulate physical assault. They regulate a lot of serious misconduct that's not sexual. And those regulations produce disciplinary outcomes. And in those cases, are the accused students provided with the investigation report? Are they permitted to know in advance what evidence is going to be introduced against them or to have some opportunity to cross-examine those who have given evidence against them to the university? So the contemporaneous answer today is slightly different than in 2016 when this was occurring because the policy has been updated. So there is a slightly different procedure today, but fundamentally it's the same procedure. The fact that this was going to be decided solely on what the complaint calls a he said versus she said is central to our analysis. This is not a case where there's an imputation of bias because of failure to gather relevant evidence. It's not a case where there's an imputation of bias because the inquiry into the evidence was not authentic. There is no allegation. Well, there is an allegation. He says that you didn't consider the text messages that he wanted to introduce and that Purdue didn't consider the witnesses that he wanted to have. So putting aside whether that would have carried the day, he is alleging in his complaint that his evidence wasn't considered. In paragraph 40 of his complaint, he alleges during the meeting, this would be the meeting with the panel, John Doe explained a few texts. So he did have an opportunity to explain the texts. The question of the meaning of those texts is, frankly, not developed in the complaint, and there are reasons for that. The evidence was inquired into, according to the face of the complaint, and the complaint is conspicuously silent on any extrinsic. Well, the face of the complaint does not suggest that the evidence was inquired into. The face of the complaint alleges exactly the opposite, that he identified multiple witnesses who they didn't speak with, that he didn't have the opportunity to call witnesses, that, sure, he presented the text messages, but they were not receptive to the text messages, that they didn't hear directly from the victim. That is the exact opposite of what you're arguing. He provided character witnesses. He provided no identification of other eyewitnesses. There's no contention in this event that there were other eyewitnesses. But there's no allegation that they spoke with any of those witnesses? To character witnesses? Yes. Not probative. I mean, whether somebody, as a freshman in college, has 35- Well, you can't have it both ways there. He's arguing he presented these and they didn't consider them. For you to say that's not probative, that's not the way the complaint is alleged. Well, Title IX would frame that question in terms of whether or not talking to them was an act of bias. So an investigator can rank materiality of evidence, decide what they think is most probative, and focus their efforts on that. I think it would frame it as whether or not not talking to them was an act of bias, because that's what the allegations are. Your Honor, respectfully, his contention was that they would all testify to his reputation for probity. Our rules of evidence don't give that type of evidence any weight in determining whether, while sleeping, John Doe digitally penetrated Jane Doe. Counsel, let me ask you another Title IX and 12b6 question here. So you say that he couldn't have satisfied Iqbal's pleading standard because he hasn't introduced evidence of bias. What about the fact that Kerr touted this Washington Post article that said alcohol is not the cause of sexual assault, men are, and that then it was the director of Kerr who prepared the very statement that summarized Jane Doe's allegations against him. Wouldn't that be sufficient to survive a motion to dismiss when you're looking for evidence of bias? The director of Kerr is not named as a defendant, and the director of Kerr was not a decision-maker in this process. She doesn't have to be named as a defendant. The point is that it's some evidence of bias in the process, that that's what Purdue relied upon to dismiss. But Kerr is not a participant in the process as a decision-maker. Kerr is a resource center for people who report that they're— Did Kerr draft the statement of the victim? Yes, in the same sense that— That's all I wanted to know. So John Doe himself had a lawyer who participated on his behalf to— Counsel, but I'm asking you about the evidence of bias. If in Iqbal, Iqbal had had evidence that the Department of Justice or some entity within the Department of Justice had said something like violence isn't the cause of terrorism, Muslims are, that might have been a different case about whether he could have satisfied his burden of stating a claim, right? That would be a different case, but I don't think that case maps up well to this case. So the campus is a free speech environment. Different voices have spoken loudly on this topic, and part of Sexual Assault Awareness Month is for those voices to be heard. So hosting a forum where a Washington Post speaker voices an opinion does not make that opinion the view of the administration any more than any other opinion. It was on its Facebook page, and it was a newspaper article. It's a newspaper article by somebody outside of Purdue University. Yeah, that CAIR posted on its Facebook page. There's no suggestion that— I'm not saying that CAIR doesn't have Free Speech Rights Council, but what I'm saying is that he has alleged in his complaint that CAIR said something that might raise an allegation of bias when CAIR and its director prepared the victim's statement on which the committee relied. We're just talking about whether he can survive a motion to dismiss. If John Doe believed that CAIR had that degree of influence in this process, surely he would have named the author of that statement as a defendant out of the many people that he named in this process, but he did not. Why should that matter? Because he's not— If that person was not a decision-maker. Precisely. That is precisely the answer. But it's evidence of the influence on the decision-makers, and it's evidence of, or at least drawing inferences in his favor, it's plausible to infer that there was gender-based bias that infected the investigation. At least part of its inputs. In a 68-page complaint, John Doe is unable to allege any fact about the central decision-maker, Dean Sermersheim, to suggest that she did anything other than evaluate the evidence in front of her. So to bootstrap a bias imputation against her from the fact that somebody else at Purdue University— Did she not know who the statement had been written by? Of course. Yes. I guess I kind of go back to the point I was making and that Judge Sykes has made. It was an input into the process, and we're just talking about a motion to dismiss. We're not talking about whether he wins. It is some evidence that the process that judged him  None of the people who, in fact, conducted the weighing of the evidence are associated with CARE. So the fact that there's a resource organization on campus for people who report under Doe v. Monroe County I'm a sexual harassment victim can't be imputed to the people who have to decide fairly under Purdue's procedures, which are on the face of the complaint fair, whether there is, more likely than not, an offense committed. What about when you combine that fact with the allegation that the decision-maker here had a conflict of interest because of her dual role as the Title IX coordinator and decision-maker, and in her role as the Title IX coordinator she worked with CARE? So case law in this circuit has found that that should not be construed as a conflict of interest, that holding more than one responsibility such as that does not mean that those individuals should be But the case law says it may be on its face. That alone isn't enough, but when you combine it with the other allegations here,  that couldn't make it a conflict. The ICBAL standard requires more than what we're discussing. The ICBAL standard requires that there not be an obvious alternative explanation for the alleged fact. And so the bare fact of having dual roles or the bare fact of any of the different circumstances that we have just walked through, when looked at as facts, do not in themselves have any connotation of bias. There needs to be a statement or some form of conduct by the decision-maker to satisfy the Title IX actual intentional bias standard. Mr. Kaley, I would like to switch. I know we're over your time, but with Judge Sykes' permission, to the injunctive relief. If John Doe had alleged that he would be a student or intended to be a student at Purdue in the future, would that satisfy standing for injunctive relief? He would need to take a step to act upon that. But if he alleged that, would that satisfy it? Alleging the intent is just a hypothetical. The backdrop for this is we need to bear in mind that John Doe, still today, is an admitted student of Purdue University. He's just not an enrolled student. So he was not expelled. He was suspended. There's a material difference between the two. But he still had to seek permission to come back. Any student who has not been in continuous enrollment needs to... And it was a specific condition of the sanctions on him that he still had to seek permission. If he had alleged that he intended to come back and re-enroll, would that have been sufficient for him? No, because he would have to also allege that he faced some obstacle in re-enrollment, which he has not alleged. But he has at least argued that he wants expungement of the misconduct finding. Yes, it's a very peculiar argument because there's nothing to expunge from his record. The suggestion that there's a D on his transcript is... I don't, frankly, know where it comes from. He served a disciplinary suspension. Many students serve disciplinary suspensions. Purdue keeps no record of that? Purdue keeps a record in the disciplinary files, but not on the transcript that would be available to the public. Although it's nonetheless true that he will have to disclose that in any number of contexts when he's asked the question, have you ever been suspended, have you ever been disciplined, have you ever been accused of sexual assault or other things, he will still have to disclose that. Have you ever been suspended or disciplined? Yes. And he alleges it, which we have to take as true. He alleges that he has to disclose it. It's a historical event. We can't make it not happen. The suspension occurred the time away from school occurred. But as far as injunctive relief, what could Purdue University be compelled to do? Purdue University cannot change that history. So the injunctive relief allegation is an incomplete allegation. It would have to be... Does he want a retrial? Does he want a new disciplinary process? He hasn't alleged what the form of exoneration would be, either within the university or within the district court. It's a large gap in the complaint. So the question of what it is that he was asking a federal court to order Purdue to do to fix this hypothetical problem that he was suspended, that he did spend a year out of school, is not filled in. But as a remedial matter, if there had been a request in the complaint to unwind the disciplinary suspension and start the process over with what he considers to be fair process in accordance with the Due Process Clause, that would be grounds for injunctive relief for which he would have standing? Had he timely come to the district court in June of 2016 and said, I am facing a suspension. I want preliminary injunctive relief because I'm facing this harm. And before this harm befalls me, there's an opportunity for remedy. So you're saying there's no way retroactively. You're saying he would have had to do this proactively before the suspension. You're saying there's no way retroactively that Purdue could exonerate him in any way, shape, or form. So there's no relief he can get conjunctively. There is no way we can change the history that he was suspended. If he was seeking some form of declaratory relief from Purdue, that rehear the case, declare it was all a mistake, that Jane Doe was a liar, that she fabricated this, he can certainly come to Purdue and ask for that. Well, the court could order the discipline unwound and the clock reset to the beginning with new process. That's an appropriate injunctive order for which he would have standing? A federal court has the power, certainly, to order Purdue University to do such a thing, yes. Does Title IX call for that? A retrial, I would submit no. What about the due process claims? Section 1983. So the Section 1983 claims are claims against the individuals for a due process violation. For there to be a due process violation, there has to be a deprivation and a failure to afford the requisite process. Right, but as to the remedy, that's an available remedy against the individuals to unwind the disciplinary suspension and, as I said, reset the clock and re-litigate the case. A Section 1983 official capacity injunctive relief order could say such a thing, yes. It would not be a Title IX order, and I think that's material here. Well, we have to do claims. Yeah, we are moving back and forth between two very distinct analyses. The injunctive relief allegation to afford more process to John Doe is actually not requested in the complaint, and we pointed this out in our briefing. He conspicuously does not ask for a new hearing, a new trial. Well, if Purdue were ordered to unwind the clock, then Purdue could choose or not to re-litigate this, right? Does he have to ask for that? I would interpret unwinding the clock as vacating the disciplinary determination that the offense occurred, and then if it is left up to Purdue whether to re-hear the evidence for that offense, that would be Purdue's decision. That would not be a constitutional obligation of Purdue. Correct. I'm just saying I don't know why he would necessarily need to ask for a different process. I mean, he's not saying, you know, if I win and if this is expunged, that Purdue please retry me with these processes. Well, it's very important, I think, that he did not ask for that in his complaint. He's seeking a damage remedy. He doesn't allege that he wants more process at Purdue. He doesn't allege that he wants to re-enroll at Purdue. He doesn't allege that he wants anything except damages from Purdue. He does allege that he's seeking an injunction in joining violations of the 14th Amendment in terms of the process. With respect to unnamed students, if there was a prospective violation by Purdue University of the 14th Amendment with respect to some other student, that's certainly not John Doe's standing to pursue. He also asked for other equitable relief, as the court deems proper. Yes. Which would capture this. One would think, given a 68-page complaint, that if what he really wanted was to be back in the hearing to cross-examine Jane Doe and to be cross-examined himself, because Jane Doe has the same Title IX protections that John Doe does, if that's really what he wanted, surely he would have asked for it. But he didn't. He has attacked the process, attacked the conclusion, without asking for a do-over. And I think that was an election that he made very consciously through his very competent counsel. All right. Thank you very much, Mr. Keeley. Thank you. Mr. Beiler, how much time? Zero. But we kept everybody going for a long time, so you can have... He did. You can have five minutes. Thank you, Your Honor. I realize we're going long, and there are other arguments you have. There's some point... One of the witnesses was a roommate who said it didn't happen. So it's just not character witnesses, although, you know, he said, look, I've got all these character witnesses. I'm not somebody who does this. And in this kind of proceeding, that does matter. Secondly, in terms of proof of gender bias, and that's why I asked for any complaint, because a lot of what we focus in on is how this case was handled. Dean Shumersheim is one of the key points there. Conflict of interest? Yes. But it's also... Here she is. You've got no reviewing of Jane Doe. None. And the statement isn't her own writing. It's being done by CARE, an Orwellian acronym. Here, John Doe appears. He made himself available to answer questions, but he's not given an opportunity to have a real hearing. He provides text, which he said, and the complaint alleges, shows there's no sexual assault. He also, you know, in his written statement, says she sent me Christmas cookies over, you know, the December holiday break. So when you add up these... What was before Dean Shumersheim, for her to rule the way she did, which was, I find her credible without even seeing her, and I find him not credible, well, you have what Doe v. Columbia referred to as, look, if the evidence is going one way, but the conclusion is the other way, bias is a permissible inference. And that's absolutely right in Doe v. Columbia. It's what I argued then. The court adopted that. And that's why the complaint was set up the way it was, to focus in on the specifics of what Dean Shumersheim did here in ruling. That does reflect gender bias. And it is pleaded that only gender bias can account for what she did here. She provided, by the way, the first time, just a one-sentence statement. You know, I find you responsible. Appeal, you have to give us, you know, an explanation. She gives it two brief sentences, which is not an explanation, just a conclusion. One of the defects here is there's no way you can say the burden of proof was properly applied here. And that's a Title IX element. Preponderance is what, you know, even the dear colleague's lawyer said, hearing the argument of the Purdue Council, when he says, oh, he didn't convince. Wait a minute. He's not the one who's supposed to have the burden of proof. And the person, and the university does, don't have a witness who's standing behind the allegations. Counsel, can you spend a few minutes talking about the remedy? I'm sorry? Can you spend some time talking about the remedy? Oh, yeah, I was going to get to that. I was going to talk about it. Okay, you don't have that much time, so I just want to make sure. Oh, I'm sorry. Okay. Well, it's totally distinguishable. Totally. Because that deals with detention of hostile terrorists who turned out to be, who were Muslim. No, no, no, the remedy that you seek. Okay. No, I know what I'm saying. I want to make it clear. Well, it's totally distinguishable. What you have in this case are problems, not just in, you know, the notice. Counsel, again, I just want to make sure you address what injunctive relief are you seeking here? Okay, now, keep in mind on the remedies. On the readmission, we did this complaint six months before he was even entitled to ask for readmission. So to fault the complaint for what isn't in there when he couldn't have asked for it, then it's a bit much. Are you asking for a new disciplinary hearing? Do you want the record expunged and wound back to the status quo? Yes. And start over? Yes, yes. I mean, and that, by the way, and it comes from the Title IX practice, the very first thing we seek, and maybe I'm just used to the practice, the very first thing we seek is to undo what's either in a transcript, some schools it is transcript, we haven't had discovery yet to figure out, and some schools it's a separate disciplinary file, but that's available if anybody asks for it, and that's the problem with all schools, medical schools, business schools, okay? And so the rewinding is necessary in order to get that out of the file. Then he can go forward with his life. Yes, if Purdue wants to, you know, re-litigate the thing, maybe if that's the option, but the fact of the matter is, this was protected not only as due process, but Title IX. The only thing the master judge said was wrong on Title IX was gender bias. I submit the complaint contains pleading as to gender bias, as to due process. So property didn't exist. I presented why there was property, why there was stigma plus. What is clear here, or should be clear here, with the injunctive relief that we seek is that this is something for which he has standing. He's hurt now. There's ongoing harm, that's your requirement. He's got standing for that. And when you talk about these cases, number one that we always seek, not just in this case, but all we seek is to clean up that transcript. Two, is to deal with, is there a suspension, or is there an expulsion, that we want to get rid of. Three, is there collateral damage, and boy is there here. Because as much as Purdue wants to say, oh he just wants damages, no, he wants to be in the Navy as an ROTC guy. And I have two sons who graduated from Purdue, ROTC. One's now a major, one's a wounded warrior captain. So I know what it means. I know in my client's heart, what he really wants. He wants his life back, so he can be, and achieve, what his hope and dream was. Alright, thank you very much counsel. Thanks to all counsel, the case is taken under advisement.